# EXHIBIT 3

21-2190-211

NO. _____

| | | |
|---|---|---|
| **MEDEIA, INC.** § | | IN THE DISTRICT COURT |
| Plaintiff, § | | |
| § | | |
| V. § | | _____ JUDICIAL DISTRICT |
| § | | |
| **EVOKE NEUROSCIENCE, INC., AND** § | | |
| **SANDEEP SURESH** § | | |
| Defendants. § | | OF DENTON COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

   **NOW COMES** Medeia, Inc., hereinafter called Plaintiff, complaining of and about Evoke Neuroscience Inc., and Sandeep Suresh, hereinafter called Defendants, and for cause of action shows unto the Court the following:

### DISCOVERY CONTROL PLAN LEVEL

   1.   Plaintiff intends that discovery be conducted under Discovery Level 2.

### PARTIES AND SERVICE

   2.   Plaintiff, Medeia, Inc., is a Florida Corporation whose address is 7 W. Figueroa Street, Suite 215, Santa Barbara, California, 93101.

   3.   Defendant Evoke Neuroscience, Inc. (hereinafter "Evoke"), a Nonresident Corporation, may be served pursuant to sections 5.201 and 5.255 of the Texas Business Organizations Code by serving the chief executive officer of the corporation, Marinela Gombosev, at 11 West 25th Street, New York, NY 10010.  Service of said Defendant as described above can be effected by personal delivery.

   4.   Defendant Sandeep Suresh (hereinafter "Suresh"), an Individual who is a nonresident of Texas, may be served with process at her place of employment at the following address:  11 West 25th Street, New York, NY 10010.  Service of said Defendant as described

1

above can be effected by personal delivery.

## JURISDICTION AND VENUE

5. The subject matter in controversy is within the jurisdictional limits of this court.

6. Plaintiff seeks:

   a. monetary relief more than $1,000,000.

7. This court has jurisdiction over Defendants because Defendants purposefully availed itself of the privilege of conducting activities in the state of Texas and established minimum contacts sufficient to confer jurisdiction over Defendants, and the assumption of jurisdiction will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.

8. Furthermore, Plaintiff would show that Defendants engaged in activities constituting business in the state of Texas as provided by Section 17.042 of the Texas Civil Practice and Remedies Code, in that Defendants committed a tort in whole or in part in Texas.

9. Venue in Denton County is proper in this cause under Section 15.002(a)(1) of the Texas Civil Practice and Remedies Code because all or a substantial part of the events or omissions giving rise to this lawsuit occurred in this county.

## FACTS

10. Medeia is a manufacturer of medical equipment. Specifically, Medeia sells a device called the BrainView NeuralScan. The BrainView NeuralScan system is a device designed to help physicians effectively measure biomarkers related to seizures, to memory loss, cognitive impairment, and other stress-related neurological conditions. A neuro-functional physiology report of the results is provided, data summary, raw data, and images.

11. Evoke is a manufacturer of a device called eVox. The eVox, "is a medical device

that measures brain health to aid doctors in the diagnosis of cognitive disorders. By measuring brain function directly, physicians can enhance their clinical work-up beyond standard subjective patient questionnaires. eVox provides clinically actionable and objective biomarkers of brain health pertinent to conditions like Alzheimer's disease, mild cognitive impairment, and other cognitive disorders."

12. Medeia and Evoke make products that perform, to a certain extent, similar functions. Therefore, Medeia and Evoke are competitors. On March 12, 2021, Suresh, the Customer Operations Manager at Evoke, sent an email full of false and misleading information about Medeia to Kimberly Kardules (hereinafter "Kardules"), Manager of Neurodiagnostics at Life Sciences Partners. The purpose of the email was to persuade Kardules into purchasing the eVox from Evoke instead of purchasing the BrainView from Medeia. Kardules had been discussing purchasing 10 devices from Medeia at $35,000.00 each.

13. In the email to Kardules, Suresh made many baseless and misleading allegations. Specifically, Suresh stated that "Slav [CEO of Medeia] and his company has engaged in *deceptive, illegal and fraudulent practices which resulted in Evoke bringing legal action*."

**From:** Sandeep Suresh <ssuresh@evokeneuroscience.com>
**Sent:** Friday, March 12, 2021 10:03 AM
**To:** Kimberly Kardules <kkardules@lsphealth.com>
**Subject:** Evoke Neuroscience Follow up

Hey Kim,

First, I want to address competitor products. While I respect and value competition in the market, this does not extend to fraudulent and illegal actions by competitors. With respect to BrainView/NeuralScan, I need to share some relevant history with you. Slav and his company has engaged in deceptive, illegal and fraudulent practices which resulted in Evoke bringing legal action. The detailed report, including link to a cease and desist letter (**please see attached**) sent by our law firm to Slav is attached. Slav has not disputed these facts and has acknowledged our claims by agreeing to remove copyright protected material from his website.

Suresh's accusation that, "Slav and his company has engaged in deceptive, illegal and fraudulent

3

practices which resulted in Evoke bringing legal action" is based on a "cease and desist letter" sent on behalf of Evoke to Medeia on October 10, 2019. The cease and desist letter was paid for by Evoke and it was full of factual inaccuracies.

> It has come to Evoke's attention that Medeia Inc. d/b/a NeuralScan Medela Inc. ("NeuralScan") is making false and misleading statements to both physicians and patients, which are deceiving Evoke's consumers and unfairly diverting products and services away from Evoke. NeuralScan manufactures and promotes the "NeuralScan System" claiming that it can "detect head injuries that a CT or MRI may be unable to detect." Critically, however, NeuralScan's product is supported neither by FDA clearance nor clinical studies, which is not only potentially dangerous but is a blatant attempt to benefit from Evoke's considerable investment of time and money to obtain approval of its products and consumers' mistaken belief that NeuralScan's competitive products are similarly cleared. Despite this, NeuralScan has made and continues to make unsupported claims to physicians, medical patients, and the consuming public regarding its product in marketing materials, which are designed to mislead such persons into believing that they are purchasing an FDA-cleared device, such as:

> > By offering objective measurements of brain function even if positive symptoms seem insignificant, we can often catch subtle abnormalities in the CNS much earlier and intervene sooner for improved outcomes.

15. Medeia's highlighted marketing material above, along with all the other marketing material on Medeia's website were generally reviewed by the FDA in September 2019. Medeia applied for FDA pre-market clearance on September 26, 2019 and obtained FDA clearance on March 17, 2020. Of course, Suresh did not tell Kardules that Medeia did in fact have FDA clearance.

16. Apparently relying on the October 10, 2019 cease and desist letter, Suresh stated to Kardules, "Slav has not disputed these facts and has acknowledged our claims by agreeing to remove copyright protected material from his website." This is also untrue. Mr. Danev did in-fact dispute the facts in the October 10, 2019 cease and desist letter.

4

> To: 'Markley, Laura E.' <Laura.Markley@klgates.com>
> Cc: 'Nickerson, Morgan T.' <Morgan.Nickerson@klgates.com>
> Subject: RE: CD letter re Evoke - NeuralScan
>
> Hi Laura Markley,
>
> We are not agree with most of the remarks in your letter.
> To avoid any legal discussions, we did update our website.
>
> In our company we take very serious any remarks, how we can improve our marketing materials, to be in a best benefits to physicians. Please fill free to contact me for any future remarks.
>
> Best Regards,
> S. Danev
> Medeia, Inc.
> Office: +1 800-433-4609
> Direct: +1 (805) 280-6909
> www.medeia.com
> www.vitalscan.com

17. What Evoke has done is the equivalent of corporate terrorism. 1) Evoke paid for a cease and desist letter to Medeia. 2) Medeia objected to the validity of the claims made in the October 10, 2019 cease and desist letter. 3) Evoke did not file a lawsuit against Medeia. 4) Nearly a year and a half passes, and Medeia is about to close on a $350,000.00 deal with Life Sciences Partners. 5) Evoke and Suresh ruined Medeia's deal with Life Sciences Partners by spreading false and disparaging information about Medeia.

## COUNT ONE: BUSINESS DISPARAGEMENT

18. Defendant published false and disparaging information about Medeia.

19. Defendant published the false and disparaging information with malice.

20. Defendant published the false and disparaging information without privilege.

21. The false and disparaging information resulted in special damages to the Plaintiff.

## COUNT TWO: TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

22. There was a reasonable probability that Plaintiff would have entered into a business relationship with a third party.

23. Defendant either acted with a conscious desire to prevent the relationship from

occurring or knew the interference was certain or substantially certain to occur as a result of his conduct.

24. Defendant's conduct was independently tortious or unlawful.

25. Defendant's interference proximately caused Plaintiff's injury.

26. Plaintiff suffered actual damage or loss as a result of Defendant's interference.

## DAMAGES FOR PLAINTIFF, MEDEIA, INC.

27. As a direct and proximate result of the occurrence made the basis of this lawsuit, Plaintiff, Medeia, Inc., was caused to suffer $500,000 in lost profits as well as damage to its reputation.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Medeia, Inc., respectfully prays that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendants, jointly and severally, for damages in an amount within the jurisdictional limits of the Court; together with pre-judgment interest at the maximum rate allowed by law; post-judgment interest at the legal rate, costs of court; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

Respectfully submitted,

By: /s/ Ryan Rouz
 Ryan Rouz
 Texas Bar No. 24093079
 Email: ryan@rouzlaw.com
 1111 S. Akard St. #405
 Dallas, TX 75215
 Tel. (469) 777-1451
 Fax. (469) 666-9291
 Attorney for Plaintiff, Medeia, Inc.